BACH v FLINT BOARD OF EDUCATION

Docket No. 135270. Submitted May 20, 1992, at Lansing. Decided December 7, 1992, at 9:45 A.M. Leave to appeal sought.

Donna L. Bach sought workers' compensation benefits for mental disability relating to employment with the Flint Board of Education. Both a hearing referee and the Workers' Compensation Appeal Board denied the claim, determining that the plaintiff's psychological difficulties, to the extent they were related to employment, were based on her unfounded perception of events of employment and were not compensable. MCL 418.301(2); MSA 17.237(301)(2), MCL 418.401(2)(b); MSA 17.237(401)(2)(b). The plaintiff appealed.

The Court of Appeals *held:*

Mental disabilities are compensable under the Workers' Disability Compensation Act where they arise out of or are significantly contributed to, aggravated, or accelerated by actual events of employment, not unfounded perceptions of events of employment or causes of disabilities. In this case, the evidence supported the appeal board's determination that the plaintiff's alleged mental disability arose out of her unfounded perception of events of employment.

Affirmed.

JANSEN, J., dissenting, stated that §§ 301(2) and 401(2)(b) of the workers' compensation act require that a mental disability must arise out of "actual events of employment, not unfounded perceptions thereof"; that the plaintiff's alleged mental disability arose out of actual events of employment; and that the case should be remanded for a determination of the extent to which employment contributed to the alleged disability.

*Thurswell, Chayet & Weiner* (by *Lenny Segel*) (*Daryl Royal,* of Counsel), for the plaintiff.

*Bellairs Dean Cooley Siler & Moulton* (by *Richard E. Cooley*), for the defendant.

Before: DOCTOROFF, C.J., and JANSEN and CORRIGAN, JJ.

DOCTOROFF, C.J. Plaintiff Donna L. Bach worked as the secretary for an elementary school principal, Sandra Epps, from November 1979 until February 3, 1982. Plaintiff testified that on February 4, 1982, she did not want to go to work and simply could not get out of bed. Plaintiff had occasionally been treated by her family physician and a psychologist for emotional difficulties. She began regular treatment by a psychologist on September 13, 1982.

Plaintiff's petition for workers' compensation benefits alleged disabling "psychosis and neurosis and related physical problems" caused by "[s]tress at job from the principal of the school." A hearing referee denied benefits after finding that plaintiff had not proven that her problems were related to her job and that she "took offense to matters which were mere ordinary matters of daily work." The Workers' Compensation Appeal Board reached the same result on October 30, 1990, stating:

> We specifically find plaintiff's psychological difficulties, to the extent they were related at all to plaintiff's employment with defendant school district, were related to plaintiff's unfounded perceptions of the events of her employment and, therefore, do not fall within the compensability standards of either MCL 418.301(2) [MSA 17.237(301) (2)] or MCL 418.401(2)(b) [MSA 17.237(401)(2)(b)].

Plaintiff testified that she began having emotional problems in September or October 1981. She attributed these problems to numerous "events" at work and her belief that a deterioration or "distancing" of her relationship with Epps had occurred. Plaintiff claimed that she became apprehensive about asking Epps questions and that Epps at times answered harshly or "snapped" at her. An event that made plaintiff feel "very un-

comfortable" occurred when she voluntarily participated in a random job exchange for half a day. Plaintiff was "really bothered" when Epps had her inform a substitute teacher that his services would no longer be needed. Plaintiff felt slighted when Epps was complimented by an administrator about the appearance of a hall bulletin board that Epps had arranged, something plaintiff viewed as her responsibility. Plaintiff felt "ill at ease" about the way she was instructed to answer the telephone and she did not "care for having to tell" callers that Epps was not available.

Plaintiff did not complain or discuss these matters with Epps. Epps testified she was unaware of plaintiff's concerns until the trial, and Epps felt plaintiff was a nice person and overall a satisfactory employee. Epps said that the employees involved in the job exchange, including plaintiff, seemed happy with the effort and that many people shared responsibility for the hall bulletin board. Epps also explained her telephone answering policy.

Plaintiff's job performance was evaluated by Epps each spring. Plaintiff was pleased with her spring 1980 evaluation, which indicated that her performance was satisfactory. But plaintiff was "very disappointed" with her spring 1981 evaluation, which also indicated plaintiff was a satisfactory employee. Plaintiff became "upset" and "angry" with herself when she did not complain about the fact that the second evaluation did not show any improvement. In a letter to Epps, plaintiff later asked to discuss the evaluation. A meeting took place and Epps agreed, at plaintiff's request, to delete from the evaluation references that plaintiff overstepped her authority on occasion and that plaintiff was "industrious."

Plaintiff testified that in the fall of 1981, when

she returned to work after the summer break, things got worse. Plaintiff felt that her letter about the job evaluation might have caused difficulties. She thought about a transfer. She began to experience physical problems (e.g., headaches and a knot in her stomach) and missed days of work in 1982. She felt she could not work after February 3, 1982.

Like all claimants, plaintiff had to prove a disability resulting from a personal injury or a work-related disease, MCL 418.301(4); MSA 17.237(301) (4), and "a personal injury arising out of and in the course of employment," MCL 418.301(1); MSA 17.237(301)(1). Plaintiff had to establish both a personal injury and a relationship between the injury and the workplace. *Miklik v Michigan Special Machine Co,* 415 Mich 364, 367; 329 NW2d 713 (1982); *Aquilina v General Motors Corp,* 403 Mich 206, 211; 267 NW2d 923 (1978). Whether plaintiff was disabled and whether the disability was caused or aggravated by employment were factual issues for the WCAB's determination, *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243, 250; 262 NW2d 629 (1978), which this Court will affirm if supported by any competent evidence in the record. *Aquilina, supra* at 213.

Unlike many claimants, however, plaintiff also had to establish that her mental disability was aggravated by her employment "in a significant manner." MCL 418.301(2); MSA 17.237(301)(2) and MCL 418.401(2)(b); MSA 17.237(401)(2)(b). Further, plaintiff's mental disability claim had to rest on "actual events of employment, not unfounded perceptions thereof." These requirements were added to the act by 1980 PA 357, effective January 1, 1982. See *Iloyan v General Motors Corp,* 187 Mich App 595, 599; 468 NW2d 302 (1991).

The WCAB denied plaintiff's claim because it was

not convinced that whatever disability plaintiff might have was related to actual events of employment that plaintiff accurately perceived. The evidence supported this determination. Actual "events" did occur in the course of plaintiff's employment. But the meaning plaintiff ascribed to these events, which was the basis for the concerns that led to her claimed disability, was not necessarily accurate. There was no convincing showing that Epps was dissatisfied with plaintiff's work or that Epps would not willingly answer plaintiff's questions. There was no convincing evidence showing that plaintiff's working relationship with Epps deteriorated as plaintiff thought it did.

The record supports the determination that plaintiff misperceived events. The WCAB found that plaintiff was wrong in her perception regarding the second evaluation because, contrary to plaintiff's belief that the meeting with Epps was unfruitful, the meeting resulted in at least two changes in the evaluation. The WCAB found that plaintiff misperceived the bulletin board incident because plaintiff never had exclusive control over the bulletin board and had a "completely unfounded" "territorial attitude" about it. Noting Epps' testimony that plaintiff enjoyed exchanging jobs and the fact that plaintiff never complained about it, the WCAB found that plaintiff's reaction, which was dependent on her perceptions, was unfounded. Thus, plaintiff's claim was based on unfounded perceptions of events, MCL 418.301(2); MSA 17.237(301)(2).

Plaintiff might well have been disappointed about her second evaluation and ill at ease about the way she was supposed to answer the telephone. But these "events," by themselves, are hardly "injuries." Plaintiff's feelings about these events were what allegedly disabled her. And

plaintiff's feelings were a function of her perceptions of the events. An event that is never perceived cannot be the basis for a compensable disability. In this case, plaintiff was bothered by several events arising out of the daily routine of her employment. The WCAB found she misperceived events. In light of the relatively innocuous nature of these events, the WCAB could readily infer that plaintiff harbored misperceptions about the events that allegedly disabled her.

Plaintiff argues that the WCAB erroneously applied the "actual events" requirement of § 301(2) to the event itself rather than to the causation element of plaintiff's case. This argument is based on an understanding that the amendment of § 301(2) adopted in 1980 PA 357 was intended to invalidate the principal holding of *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1; 268 NW2d 1 (1978)—that a mental disability claim could be proved by a strictly subjective causal nexus, i.e., that the honest perception of a claimant that a personal injury (in the form of a precipitating, work-related event) caused the claimant's disability. Plaintiff argues that the Legislature intended to eliminate only the honest perception or subjective causal nexus standard that was approved by *Deziel.* But, while the Legislature did intend to invalidate the subjective causal nexus standard of *Deziel, Sobh v Frederick & Herrud, Inc,* 189 Mich App 24, 27; 472 NW2d 8 (1991); *Iloyan, supra; Greenwood v Pontiac Bd of Ed,* 186 Mich App 389, 396; 465 NW2d 362 (1990), that does not mean that a subjective standard can be applied to the determination of a personal injury (the second of the three elements outlined in *Deziel*).

A straightforward reading of § 301(2) shows that unfounded perceptions of events cannot be the

basis of a workers' compensation claim, whether the unfounded perceptions relate to causation or to injury. Section 301(2) is written in terms of disabilities arising out of actual "events." This language on its face applies to the injury element that every claimant must prove. It would require an unreasonable reading of § 301(2) to find that it does not apply to injuries or events. This is not the momentous interpretation plaintiff suggests, however. The injury element of a workers' compensation claim has traditionally been a matter of actuality, not of subjective perceptions. Even *Deziel* applied a subjective test only to the causation element. In amending § 301(2) and § 401(2)(b), the Legislature was making it clear that unfounded perceptions have no role in workers' compensation cases.

Plaintiff also argues that an objective standard is unworkable and is contrary to the workers' compensation doctrine that an employer takes an employee as the employee comes through the factory gate. See *Zaremba v Chrysler Corp,* 377 Mich 226, 231; 139 NW2d 745 (1966); *Riddle v Broad Crane Engineering Co,* 53 Mich App 257, 260; 218 NW2d 845 (1974). Plaintiff contends that a "reasonable man" standard is unworkable because it provides no guidance.

In this case, the wcab correctly applied § 301(2) by denying benefits after finding that plaintiff's disability was based on unfounded perceptions of events. To the extent this process required application of an objective standard, it was required by the statute. An objective standard does not represent a change with respect to the determination of a work-related injury. A reasonable person test is often utilized in the common law, and the concept is recognized in workers' compensation law. See *Bower v Whitehall Leather Co,* 412 Mich 172, 183;

312 NW2d 640 (1981), which noted that the favored-work doctrine must be "tempered with reasonableness."

Affirmed.

CORRIGAN, J., concurred.

JANSEN, J. *(dissenting.)* Plaintiff related numerous events that led to her disabling depression as diagnosed by two doctors. The events related by plaintiff did occur. The change in the law brought about by the 1980 amendment of MCL 418.301(2); MSA 17.237(301)(2) and, MCL 418.401(2)(b); MSA 17.237(401)(2)(b) makes it clear that a mental disability must arise out of "actual events of employment, not unfounded perceptions thereof." The actual events were undeniably established by plaintiff in this case. The statute does not say that the events must be extraordinary or something that must disturb a reasonable employee. Such a requirement would be a significant change from settled law. *Zaremba v Chrysler Corp,* 377 Mich 226, 231; 139 NW2d 745 (1966).

Plaintiff established actual events of employment. She also established causation through the testimony of two doctors. While a third doctor found plaintiff only suffered from a personality disorder that was unrelated to her employment, the WCAB did not rely on that doctor's testimony in reaching its disposition. The WCAB seemed to agree that plaintiff was disabled.

Under these circumstances, plaintiff was entitled to benefits, providing her employment contributed to her disability in a significant manner as required by § 301(2). Because the WCAB never reached the significant manner requirement, I would remand for a determination of the extent that employment contributed to plaintiff's disability.